# IN THE SUPREME COURT OF IOWA

No. 133 / 06-0024

Filed December 28, 2007

**STATE OF IOWA,**

Appellee,

vs.

**JAMES DONALD LANE,**

Appellant

---

Appeal from the Iowa District Court for Tama County, Douglas S. Russell, Judge.

Defendant appeals his conviction for threat of terrorism and intimidation with a deadly weapon. **AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Brent D. Heeren, County Attorney, and Richard Vander Mey, Assistant County Attorney, for appellee.

**STREIT, Justice.**

We are asked to determine whether James Lane threatened to commit terrorism while in police custody. We find Lane could not have been guilty of the threat of terrorism when he made menacing statements to the sheriff while in custody because there was no reasonable possibility he would *imminently* act on those threats. It was error to deny Lane's motion for judgment of acquittal for the threat-of-terrorism charge. However, there was sufficient evidence to submit the charge of intimidation with a dangerous weapon to the jury because an imminent threat is not required to be guilty of intimidation. Moreover, we find defense counsel's failure to request a specific jury instruction was not prejudicial. We therefore affirm Lane's conviction with respect to the intimidation count and reverse his conviction for the threat of terrorism.

**I.      Facts and Prior Proceedings.**

On March 19, 2005, Lane's brother told the Tama County Sheriff's Department Lane was at their mother's home in violation of a protective order. Officers verified there was a valid protective order requiring Lane to stay away from his mother Dorothy Lane.

Sheriff Dennis Kucera called Dorothy's residence to see whether Lane was there. Lane answered the telephone. The sheriff and several deputies proceeded to Dorothy's home in Traer. Sheriff Kucera knocked on the back door. Lane answered the door. He was told he was under arrest for violating the protective order. While being handcuffed, Lane made the following statement: "Sheriff Kucera, you can take this how you want. That Atlanta shooting is not going to be the only thing that's going to happen. I am going to come down, get a court schedule, and I'm going to take care of all you mother fuckers." Lane was referring to a courthouse shooting which

occurred eight days earlier in Atlanta, Georgia. There, a man on trial for rape, overpowered his guard and then killed a judge, a court reporter, and a deputy sheriff before fleeing. Sheriff Kucera replied, "You don't even want to go there." Lane continued, "You guys are all going to be sorry when I get a court schedule."

Lane was placed in a deputy's car and transported to the sheriff's office in Toledo. During the drive, Lane continued making comments. Lane said he should have killed his ex-wife in the 1970s because he would have only had to serve twelve-and-a-half years in prison. He also spoke of his distrust of the judicial system and the government.

While Lane was in the booking room of the jail, he said "You guys are going to be sorry. You know, I will get a court schedule and be down there." He did not make any further reference to the Atlanta shooting. Other than "running his mouth," Lane was obedient at all times.

Based on the statements Lane made to the officers, Lane was charged with (1) intimidation with a dangerous weapon with the intent to injure or provoke fear or anger in another, a class C felony and (2) threat of terrorism, a class D felony. A jury found Lane guilty of the lesser included offense of intimidation with a dangerous weapon and guilty as charged of the threat of terrorism.

On appeal, Lane claims there was insufficient evidence to convict him on either count. He also alleges his trial counsel was ineffective by failing to request a certain jury instruction.

## II.     Scope of Review.

We review sufficiency-of-evidence challenges for correction of errors at law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). The trial court's findings of guilt are binding on appeal if supported by substantial evidence.

Iowa R. App. P. 6.14(6)(*a*). The evidence is substantial if a rational fact finder could find the defendant guilty beyond a reasonable doubt. *State v. Heard*, 636 N.W.2d 227, 229 (Iowa 2001). " 'We view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the' evidence in the record." *Id.* (quoting *State v. Mitchell*, 568 N.W.2d 493, 502 (Iowa 1997)).

For ineffective-assistance-of-counsel claims, we review the totality of the circumstances relating to counsel's conduct de novo. *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987).

**III.    Merits.**

**A.    Threat of Terrorism.** Iowa Code section 708A.5 (2005) states "[a] person who threatens to commit terrorism or threatens to cause terrorism to be committed and who causes a reasonable expectation or fear of the imminent commission of such an act of terrorism commits a class 'D' felony."

> "*Terrorism*" means an act intended to intimidate or coerce a civilian population, or to influence the policy of a unit of government by intimidation or coercion, or to affect the conduct of a unit of government, by shooting, throwing, launching, discharging, or otherwise using a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person, or within an assembly of people.

Iowa Code § 708A.1(3).

Lane argues the State did not present sufficient evidence to prove a reasonable expectation Lane would *imminently* act on his threats. We agree.

The legislature did not define the word "imminent" as used in section 708A.5. As a result, " 'we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage' to

determine its meaning." *State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006) (quoting *State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996)). In *Shanahan*, we recognized the following definitions of "imminent" for purposes of our self defense/defense-of-others statute: " 'ready to take place,' 'near at hand,' 'hanging threateningly over one's head,' and 'menacingly near.' " *Id.* (quoting *Webster's Third New Int'l Dictionary* 1130 (2002)). Lane's threats do not satisfy any of these definitions.

Lane was in custody when he made the statements to the officers. Because he had been arrested for violating a protective order, he was not subject to release until after appearing in court. Iowa Code § 236.11. As a practical matter, Lane would have been held in jail until at least the next morning. Consequently, there was no reasonable likelihood Lane would *imminently* act on his threats.

The State contends "[t]he mere fact [Lane] was taken into custody immediately after he made the threats in this case does not rule out the possibility that he could escape and make good on the threats, or could possibly enlist the aid of a confederate to act upon his threats." While nearly anything is possible, the statute requires a "*reasonable* expectation or fear of the *imminent* commission of such an act of terrorism." *Id.* § 708A.5 (emphasis added). It was highly unlikely Lane would escape custody. Moreover, there is no evidence in the record to suggest Lane was capable of enlisting the assistance of another person while in custody.[1]

The State complains "law enforcement officers should not have to wait until a defendant, who has previously threatened them, comes after them with a gun before they can make an arrest." This statement ignores the fact a person making threatening statements to police officers may be charged

---

[1]After Lane arrived at the sheriff's office, he declined the opportunity to make a telephone call.

with intimidation regardless of whether the person threatened imminent harm.  Moreover, the State seems to suggest imminence for purposes of section 708A.5, threat of terrorism, should be based on the quality or seriousness of the threat rather than the temporal aspect of the threat.  Certainly, our statute does not require a person to threaten the *immediate* commission of an act of terrorism.  Nevertheless, it does require a reasonable expectation the act is impending or about to occur.  Lane's threats could not have been carried out until the next day at the earliest.  If we held that was sufficient for a threat of terrorism, we would be left with the odd result of imminence meaning one thing for self defense and another thing for terrorism.  For these reasons, we find the district court erred in denying Lane's motion for judgment of acquittal on the terrorism count.

**B.** **Intimidation with a Dangerous Weapon.**  Lane also claims there was insufficient evidence to convict him of intimidation with a dangerous weapon.[2]  Under Iowa Code section 708.6,

> A person commits a class "D" felony when the person shoots, throws, launches, or discharges a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person, or within an assembly of people, and thereby places the occupants or people in reasonable apprehension of serious injury *or threatens to commit such an act under circumstances raising a reasonable expectation that the threat will be carried out.*

(Emphasis added.)

Lane claims the State failed to produce evidence to support a reasonable expectation the threats would be acted upon.  We find Lane failed to preserve this error for appeal.  While Lane's counsel moved for a judgment of acquittal on both counts, he focused on the lack of an

---

[2] Section 708.6 was formerly entitled "Terrorism."  *See* Iowa Code § 708.6 (2001).  In 2002, the legislature changed the title to "Intimidation with a dangerous weapon" and created chapter 708A, which now pertains to "Terrorism."  *See* 2002 Iowa Acts ch. 1075.

imminent threat for purposes of the terrorism charge and neglected to provide any grounds to support an acquittal on the intimidation charge. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996) (holding motion for judgment of acquittal does not preserve error where there was no reference to specific grounds).

Lane alternatively argues his trial counsel's failure to preserve error deprived him of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The test for determining whether a defendant received effective assistance of counsel is "whether under the entire record and totality of the circumstances counsel's performance was within the range of normal competency." *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981). The defendant must prove (1) counsel failed to perform an essential duty, and (2) prejudice resulted. *Id.* To establish prejudice, the defendant must demonstrate the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

We generally prefer resolving ineffective-assistance-of-counsel claims on post conviction relief in order to give trial counsel an opportunity to explain the reasons, if any, for his acts or omissions. *See State v. Bass*, 385 N.W.2d 243, 245 (Iowa 1986). We will, however, address such a claim on direct appeal if the record is sufficient to do so. *State v. Bumpus*, 459 N.W.2d 619, 627 (Iowa 1990).

In the present case, we see no reason to delay ruling on this issue. Trial counsel's explanation is not necessary because counsel did not fail to perform an essential duty. Even if counsel had articulated grounds for the

motion for judgment of acquittal on the terrorism charge, the district court would not have granted the motion because the State presented sufficient evidence for a jury to decide Lane's statements created a "reasonable expectation that the threat will be carried out." Iowa Code § 708.6. *See United States v. Floyd*, 458 F.3d 844, 849 (8th Cir. 2006) ("The district court does not decide that a particular communication *is* a threat as a matter of law, but whether there is sufficient evidence for a jury to decide that a reasonable recipient would interpret it as a threat.").

We have previously said "[t]hreats need not be explicit; they may be made by innuendo or suggestion." *Crone*, 545 N.W.2d at 271 (citing *State v. McGinnis*, 243 N.W.2d 583, 589 (Iowa 1976)). With respect to the motion for a judgment of acquittal, the issue before the district court was whether there was sufficient evidence for a reasonable jury to find "a reasonable person of ordinary intelligence would interpret [Lane's] statement as a threat . . . in light of the surrounding circumstances." *State v. Milner*, 571 N.W.2d 7, 10 (Iowa 1997).

Lane referred to the Atlanta courthouse shooting only eight days after it occurred. He said "[t]hat Atlanta shooting is not going to be the only thing that's going to happen. . . . I'm going to take care of all you mother fuckers." Although he never specifically said he was going to shoot people, given the circumstances, it could reasonably be inferred that is what Lane meant. *See Floyd*, 458 F.3d at 849 (holding recent newspaper article about a judge's family being murdered sent to a lawyer and two judges with the words "Be Aware Be Fair" written at the top was sufficient evidence for a jury to find the defendants guilty of mailing threatening communications). Moreover, Lane was very angry when he made the statements to the police. He admitted yelling and cursing at the officers because he wanted to make

sure they heard him. The officers testified they did not think he was joking. Instead, they took his threats very seriously. The district court properly submitted the intimidation charge to the jury. Thus, Lane's attorney was not ineffective for failing to articulate grounds for an acquittal on this charge.

      **C.    Jury Instructions.** Lastly, Lane alleges his trial counsel was ineffective for failing to request an objective standard instruction for the "reasonable expectation" component of both counts. He contends the jury should have been instructed the State had the burden to prove *a reasonable person* would expect the threat to be carried out based on the existing facts and circumstances. We find it unnecessary to reserve this issue for post-conviction relief. Since there was no prejudice, we need not determine whether Lane's trial counsel failed to perform an essential duty. *See State v. Cook*, 565 N.W.2d 611, 614 (Iowa 1997) (noting the court may dispose of an ineffective-assistance-of-counsel claim if the defendant fails to meet either the breach of duty or prejudice prong).

      The jury was instructed the State must prove for intimidation with a deadly weapon that

1. On or about March 19, 2005, in Tama County, Iowa, the Defendant threatened to shoot a dangerous weapon at, into, or in a building occupied by another person.

[and]

2. The Defendant made the threat under circumstances *raising a reasonable expectation that the threat would be carried out.*

(Emphasis added.) As we have already alluded, the jury had to determine whether a reasonable person would have expected Lane to act on his threats as opposed to whether the officers themselves felt threatened. This instruction does not state the jury should apply an objective or reasonable-

person standard. *See State v. Jackson*, 305 N.W.2d 420, 424 (Iowa 1981) (approving an instruction explaining reasonable expectation "means whether, under the existing facts and circumstances, a reasonable person would expect that the threat would be carried out"). However, for an ineffective-assistance-of-counsel claim, the defendant must demonstrate the "reasonable probability, that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. The evidence overwhelmingly proved a reasonable person hearing Lane's statements would have expected him to act on his threats. He referenced a recent courthouse shooting while yelling and cursing at the deputies. He told them more than once they were going to be "sorry" when he got a court schedule. He expressed regret for not killing his ex-wife. Considering the circumstances of Lane's statements, there is no reasonable probability the results would have been different.

## IV.    Conclusion.

There was insufficient evidence to submit the threat-of-terrorism charge to the jury. It was error to deny Lane's motion for judgment of acquittal on that count. With respect to the intimidation charge, there was ample evidence of intimidation to support the jury's finding of guilt. A new trial for the intimidation count is not necessary because Lane was not prejudiced by trial counsel's failure to request an objective-standard jury instruction.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**